## Case No. 1,021.

BARNES et al. v. STEAMSHIP CO.

[25 Leg. Int. 196;[1] 6 Phila. 479.]

Circuit Court, E. D. Pennsylvania. June 19, 1868.

COLLISION—LIABILITY—MEASURE OF—ACT MARCH 3, 1851, c. 43.

1. The appointment of nautical assessors in collision cases approved.

2. The personal liability of owners of vessels in causes of collision measured by the value of their vessel immediately before collision and freight pending.

3. The owners [are] not exempted from such liability by loss of their own vessel in consequence of the collision.

4. Foreign attachment in admiralty lies in cases of tort.

5. The provisions of the 4th section of the act of congress of March 3, 1861, [1851, (9 Stat. 635, c. 43,)] authorizing ship owners to transfer their interest in the ship and freight to a trustee for claimants does not apply to a loss to another vessel by collision nor to injuries to cargo on board the vessel in fault by reason thereof.

[Cited in Wright v. Norwich & N. Y. Transp. Co., Case No. 18,087.]

[Appeal from the district court of the United States for the eastern district of Pennsylvania.

[In admiralty. Libel for collision by Barnes and others, owners of the schooner Pequonnock, against Steamship Company, owner of the steamer Westchester. Maltritz, Baird & Company, owners of the steamer's cargo, brought suit, and attached certain policies of insurance which were paid into court. The district court entered decrees (nowhere reported) for both sets of libellants, allowing them to share proportionately in the fund. Barnes and others appeal. Decree giving appellants priority in their claim upon the fund.]

M. P. Henry, for the Pequonnock.

Charles Gibbons, for the Westchester.

J. Warren Coulston, for Maltritz, Baird & Company.

GRIER, Circuit Justice. The points involved in this case are well stated by the counsel of libellants. On the night of July 20, 1866, the schooner Pequonnock, owned by Barnes and others, was sunk by a collision with the steamer Westchester, owned by the respondent, off the coast of New Jersey. Shortly afterwards the steamer was found to be sinking and was run ashore on the coast of New Jersey below Absecom. She was insured in several offices in Philadelphia in valued policies in the aggregate amounting to $20,000. The vessel was abandoned to the underwriters. Very little in value was saved. The owners of the Pequonnock brought suit on the 3d August, 1866, and attached these policies. On the 21st August, 1866, Maltritz, Baird & Company, owners of cargo on board the West-

[1] [Reprinted by permission.]

chester, brought suit and attached the same policies. After decree for libellants, the policies, amounting to $17,863.07, were paid into court. The decree for Barnes et al. amounted to $14,825.00. The decree for Maltritz, Baird & Company amounted to $4,898.00. In decreeing these amounts the court below allowed the libellants to share proportionately in the fund.

The questions are: 1. The liability of the owners of the respective vessels for the collision. 2. The claim of the owners of the Westchester to be discharged from all liability by reason of the loss of their vessel. 3. The right of the owners of the Pequonnock to priority of payment out of the fund. As it is intended to take this case by appeal to the supreme court, I do not feel called upon to vindicate my decision by any argument on the subject, but shall merely state the results of a careful examination of the case and the authorities cited.

1. Notwithstanding the objections, urged by the learned counsel for the respondents to the report made by the nautical assessors, on examination of the testimony I find it to be a clear and correct statement, both of the facts and questions of law involved in the case. It is a very judicious practice of the district court in this district, to supply the want of "Trinity Masters," by using the nautical experience and judgment of intelligent masters of vessels who have retired from the service, and judging from the able reports made by those persons in this and other cases, that court has been peculiarly fortunate in its selection. We fully concur in their report, and hold that the Westchester was in fault. The proceedings in this case throughout are in accordance with the established practice in courts of admiralty. Process of attachment in admiralty is governed by its own rules and principles, and is not borrowed from the custom of London.

2. The owners are responsible for the injuries occasioned by a collision to the extent of the value of their interest in the vessel and freight. The owner is not exempted from liability when by the same collision his own ship instantly founders. This liability is measured by the value of the vessel immediately before the collision. 14 Gray, 288; 15 Mees. & W. 391; Pars. Mar. Law, 391; 3 W. Rob. Adm. 101.

3. The owners of the Pequonnock have a right to priority of payment out of the fund without any deduction for or on account of bottomry, mortgage, pilotage, towage, seaman's wages, or other contracts of the master or owners of the Westchester.

4. If the property attached is more than sufficient to pay the Pequonnock, the libellants, Maltritz, Baird & Taylor will be entitled to the remainder, if any.

5. The 4th section of the act of congress of March 3, 1851, c. 43. [9 Stat. 635,] "to limit the liability of ship owners," has no application to either of these claims. 14 Gray, 288. Opinion of Judge McGrath, 8 Amer. Law Reg. 206, [In re Sinclair, Case No. 12,895.]

Let a decree be drawn with this difference from that in the district court, that the Pequonnock be entitled to its whole claim with interests and costs, the residue, if any, to be applied to the claim of Maltritz, Baird & Company.